DYAR SALES & MACHINERY CO v. ROY BLEILER

May Term, 1934.

Present: POWERS, C. J., SLACK, MOULTON, THOMPSON, and SHERBURNE, JJ.

Opinion filed October 2, 1934.

426

*George R. McKee* for the defendant.

*Theriault & Hunt* for the plaintiff.

SLACK, J. The plaintiff assembles and sells road machinery. The defendant had been in its employ as traveling salesman two years prior to January 2, 1932. On that day they entered into a contract in writing, by the terms of which defendant was to cover the State of Vermont as salesman for plaintiff and not engage directly or indirectly in the sale of any other road machinery than that sold by it. The contract provided that either party could terminate it upon seven days' notice in writing. It also provided that: ''Should this contract be terminated by

either party for any reason whatsoever, the said Roy Bleiler agrees on his part that for the period of one year from the termination of this contract, he will not engage either directly or indirectly in the sale, in the above mentioned territory, of equipment similar to that sold by the Dyar Sales and Machinery Company.''

On March 27, 1933, plaintiff gave defendant notice in writing that the contract would terminate seven days from that date. This suit, which was commenced April 15, 1933, is to restrain defendant from violating the quoted provision of the contract. The defendant filed an answer; the case was heard on the merits; the facts were found; and a decree was entered for plaintiff. The case is here on defendant's exceptions and appeal.

Defendant requested the chancellor to make the following supplemental findings: (1) The terms of the contract are harsh, oppressive, and unreasonable and ought not to be enforced in equity; (2) the contract is more restrictive than necessary to protect plaintiff; (3) the services of defendant were not unique, unusual or extraordinary; (4) plaintiff could readily find an equally capable man to take defendant's place, and (5) defendant, while serving plaintiff did not acquire any trade or business secrets which he might divulge to plaintiff's harm. This the chancellor declined to do and defendant excepted.

These exceptions do not require consideration. The bill signed by the chancellor, which presents the only questions for review, *Stevens* v. *Flanders et al.*, 103 Vt. 434, 154 Atl. 673, does not specify the grounds of exceptions as required by chancery rule 39, nor is the evidence made part of the record for the purpose of showing that defendant was entitled to such findings. *Gray et al.* v. *Brattleboro Trust Co.*, 97 Vt. 270, 122 Atl. 670. Although the transcript is referred to in the bill of exceptions and made part thereof, it is not made controlling or referred to for any particular purpose. Such reference, like the exceptions themselves, is too general to avail defendant. But the exceptions are without merit. There is no claim that defendant's services were unique or extraordinary or that he acquired trade secrets which he might divulge, in the sense in which those terms are ordinarily used; consequently findings respecting these matters were not material. The evidence re-

lating to the questions covered by the other requests was such that the chancellor was justified in not complying with them.

■ ■ The defendant excepted to the finding that he was heavily indebted to plaintiff on his drawing account at the time the contract was terminated, and was then overdrawn $800. It is argued that the language "heavily indebted" is inapt because defendant's indebtedness was comparatively small if only $800 and his sales were $50,000 as the evidence tended to show. Since the findings show the amount of his indebtedness, the expression used was harmless. It is claimed, too, that "even if defendant was indebted to the plaintiff and it appeared that defendant was financially irresponsible," there was nothing in the contract that permitted plaintiff to terminate it for that reason. It had the right, as we have seen, to terminate the contract, upon seven days' notice in writing, regardless of reason, so the finding is harmless as far as this claim is concerned. It was proper, however, as tending to show the financial irresponsibility of defendant and consequently the inadequacy of plaintiff's remedy at law, although the latter is not denied.

■ It is found in substance that subsequent to April 3, 1933, defendant on several occasions, at different places in this State, solicited orders for road machinery dealt in by concerns that were competitors of plaintiff and received orders from different parties for such machinery. This was excepted to as contrary to the evidence, the claim being that the evidence failed to show that defendant solicited orders for competing firms after the date mentioned, but that the calls he admitted making on various parties were of a "friendly nature," and that orders placed with him were due to friendship resulting from former acquaintance.

Such was not the only, or the reasonable, conclusion to be drawn from the evidence. The defendant had been a salesman for one of plaintiff's competitors before he went with plaintiff; he knew that that concern wanted him back; he planned to return to it when his contract with plaintiff was terminated; that concern had had business cards printed upon which defendant appeared as its representative, which he distributed to those he called on in a "friendly" way about the time or shortly after plaintiff's contract was terminated. Moreover, his brother was then in the employ of that concern which defendant made known to prospective customers, and he offered to, and did,

make their wants known to his brother and to his brother's employer, and in one instance took an order for that concern which was sent to it and was filled. This evidence clearly justified the finding complained of.

■ It is found that prior to the making of this contract plaintiff had been to substantial expense in instructing and training defendant as a salesman of its goods, and that he had thereby become acquainted with its road machinery equipment and consequently valuable to it as a salesman. This was excepted to as contrary to the evidence. It is claimed that the evidence showed that defendant acquired his training as a salesman while with his former employer, the concern to whom he planned to return, other than one week which he spent in Indiana at the plant where the machinery plaintiff sells is manufactured and at its expense. Even though defendant acquired training as a salesman while with his former employer, it stands to reason, as plaintiff's evidence clearly tended to show, that his experience with it and its peculiar type of machinery for more than three years made him a more valuable man for the plaintiff. The affirmative evidence regarding this issue supports the finding.

■ Defendant excepted to the finding that the restrictive provision in the contract was in the circumstances appearing necessary for the protection of plaintiff's business and good-will in Vermont, and imposed no more restraint on defendant than was necessary for that purpose, as contrary to the evidence. Wherein the evidence fails to support these findings is not pointed out; but it is urged that because of the economic depression that existed when the contract was made employees were forced by the natural law of self-preservation to accept employment offered them, the terms of which were oppressive and unconscionable, that the court of equity ought not to keep a man from earning a livelihood for himself and family, and that it should proceed with the utmost caution and see that its prohibitive power is not so exercised as to do more harm than good. Courts of equity should always proceed with caution in giving effect to contracts of this nature, and we have no reason to doubt that the court did so in this case. The other matters suggested are not germane to the question raised by the exception which is: Does the evidence support the finding? We think it does.

■ The defendant complains that the court declined to hear

his demurrer, but, since the record fails to show any question regarding this alleged grievance saved for review, we do not consider it, but suggest that the court's action may have been due to defendant's failure to comply with chancery rule 13.

 The defendant has briefed certain exceptions to the exclusion of evidence. These do not appear in the bill of exceptions signed by the chancellor and therefore are not availing. *Stevens* v. *Flanders et al., supra.*

This disposes of all questions raised by the exceptions.

Whether defendant challenges the sufficiency of the findings to support the decree is not certain. In discussing the exceptions we have disposed of, he assails the right of the court in general to grant the relief prayed for on the ground that the contract is harsh and oppressive, that his services were not unique or extraordinary, that he acquired no trade secrets, that plaintiff could readily employ another to do his work, and that the enforcement of the contract was not necessary to protect plaintiff's rights, but makes no claim that the findings do not support the decree.

 The law recognizes two classes of contracts in restrain of the right of an employee to accept employment with others than his employer; those that cover the term of the employment and those applicable after the employment is terminated. We are concerned with the latter class only. In this class the question whether the services are unique or extraordinary is not usually involved, but the right to equitable relief depends upon whether, by reason of the character of the employment or the services rendered by the employee, he has been able to acquire such close and intimate relations with the employer's customers or patrons, or obtain such knowledge of the employer's business, that if he were to use the acquaintanceship or knowledge thus obtained in a competing business, in breach of his agreement, the result would cause irreparable injury to the employer for which he has no adequate remedy at law. What must appear in order to secure equitable relief in each of the classes of contracts above mentioned is pointed out in *Eureka Laundry Co.* v. *Long,* 146 Wis. 205, 131 N. W. 412, 413, 35 L. R. A. (N. S.) 119. It is found in the instant case that the contract imposed no more restraint upon defendant than was necessary for plaintiff's protection; that defendant breached it by soliciting and receiving orders for competing firms after its

434

termination and within the limitation period; that the damages to plaintiff resulting from breaches of such contract would be continuing in nature and difficult to ascertain; and that defendant had overdrawn his account with plaintiff to the amount of $800 at the time the contract was terminated. That these findings sustain the decree cannot be doubted. *Eureka Laundry Co.* v. *Long, supra; Walker Coal & Ice Co.* v. *Westerman,* 263 Mass. 235, 160 N. E. 801; *A. Fink & Sons* v. *Goldberg,* 101 N. J. Eq. 644, 139 Atl. 408; *Owl Laundry Co.* v. *Banks,* 83 N. J. Eq. 230, 89 Atl. 1055; *American Ice Co.* v. *Lynch,* 74 N. J. Eq. 298, 70 Atl. 138; *Deuerling* v. *City Baking Co.,* 155 Md. 280, 141 Atl. 542, 67 A. L. R. 993; *Knapp* v. *S. Jarvis Adams Co.* (C. C. A.) 135 Fed. 1008; *Granger* v. *Craven,* 159 Minn. 296, 199 N. W. 10; and cases collected in 52 A. L. R. page 1366, note (b), 1, and 9 A. L. R. page 1468, note (b), 1. Speaking generally, these cases hold that restrictive provisions like the one in this case will be enforced in equity unless found to be contrary to public policy, unnecessary for the employer's protection, or unnecessarily restrictive of the rights of the employee, due regard being had to the subject-matter of the contract and the circumstances and conditions under which it is to be performed. The employee has the burden of proving such facts. *Knapp* v. *S. Jarvis Adams Co., supra.* This defendant has failed to do.

■ With respect to the territory to which the restriction may apply, the rule has always been that it may be extended to the limits wherein the plaintiff's trade may be likely to go. *Knapp* v. *S. Jarvis Adams Co., supra,* and cases cited in *Harrison* v. *Glucose Sugar Refining Co.* (C. C. A.), 116 Fed. 304, 58 L. R. A. 915, in which no territorial restrictions appear. The changes which have marked the course of judicial decisions in modern times seem to consist in conforming the application of the rule to the constant development of the facilities of commerce and the employment of the avenues of trade.

■ That plaintiff is properly in equity, and entitled to the relief he seeks is shown by *Eureka Laundry Co.* v. *Long, supra,* and *Walker Coal & Ice Co.* v. *Westerman, supra.* In the former it is said: "If the restrictive covenants of the contract are held valid, it is apparent that an action at law for their breach would no more furnish an adequate remedy than would an action at law for the breach of a similar covenant in a contract for the sale of a business. That equity alone can furnish an adequate

remedy in such cases is well settled." In the latter case it is said: "The plaintiff was not required to defer commencement of proceedings for relief until it could be shown that the defendant had actually solicited customers of his former employer, and that injury to its business had been thereby, or by other unlawful means, accomplished."

The time for which the injunction was granted has expired, but, since payment of costs depends upon the disposition of the decree (*Deuerling* v. *City Baking Co., supra*), it is affirmed.

*Decree affirmed, and cause remanded.*